IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 3:23-cr-00081 |
| v. | ) | |
| | ) | Judge Crenshaw |
| JOSIAH GARCIA | ) | |

## PLEA AGREEMENT

The United States of America, through Henry C. Leventis, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorney, Brooke K. Schiferle and defendant, Josiah Garcia, through defendant's counsel, David Fletcher, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

### Charge and Penalties in This Case

1. Defendant acknowledges that he has been charged in the indictment in this case with the Use of Interstate Commerce Facilities in the Commission of Murder-For-Hire, in violation of Title 18, United States Code, Section 1958. The maximum penalties for this charge are as follows: up to 10 years' imprisonment; a term of supervised release of not more than three years; a $250,000 fine; and a $100 special monetary assessment.

2. Defendant has read the charge against him contained in the indictment. That charge has been fully explained to him by his attorney. Defendant fully understands the nature and elements of the crime with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

3. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the sole count of the indictment, as described above.

4. In addition, as further provided below, defendant agrees to abandonment of property interests.

## Acknowledgements and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

5. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case No. 3:23-cr-00081.

6. Defendant understands that by pleading guilty he surrenders certain trial rights, including the following:

    a. If defendant persisted in a plea of not guilty to the charge against him, he would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

    b. If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charge beyond a reasonable doubt; and that it must consider each count of the indictment against defendant separately.

c.  If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

d.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

e.  At a trial, defendant would have a privilege against self-incrimination so that he could testify or decline to testify, and no inference of guilt could be drawn from his refusal to testify.

7.  Defendant understands that by pleading guilty he is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

Factual Basis

8.  Defendant will plead guilty because he is in fact guilty of the charge contained in the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt: This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

On February 16, 2023, defendant submitted an employment inquiry to www.rentahitman.com, through the inquiry function on the website, where he indicated that he

3

was interested in obtaining employment as a hitman. In his inquiry, defendant indicated he had "military experience, and rifle expertise," and requested an "in depth job description." On February 17, 2023, defendant reached out again to the website via a service request. In this request, defendant included a home address which matches the address on his Tennessee State Driver License, as well as his correct date of birth. Defendant indicated that he was "looking for employment," but was having technical difficulties with the website.

Also, on February 17, 2023, defendant purchased a Black Rain Ordinance Inc. Spec 15 Rifle, Serial Number SM0616441, which is an AR-15 style rifle, sometimes referred to as an "M4." The same day, defendant purchased a rifle scope at a different store.

On February 18, 2023, the website owner responded to defendant via email with a request for a resumé, headshot, and an image of defendant's identification. On February 19, 2023, defendant replied via email and provided a resumé, a photograph of his Tennessee State Driver license, and a photograph of himself. On February 20, 2023, defendant sent another follow-up email to the website owner and advised that he was following up because he had not heard back after submitting his resumé.

On that same day, February 20, 2023, defendant posted a photograph of the rifle that he purchased a few days earlier, to his public Facebook profile, with a cation reading, "She's beautiful."

After reaching out multiple times about his employment inquiry, defendant received a response from the website administrator letting him know that they would be in touch to schedule an interview. On March 13, 2023, defendant reached out again, inquiring about the status of his employment application. This time, the website administrator, after conferring with FBI agents who had been alerted to defendant's requests for employment as a hitman, responded to defendant that a field coordinator would be in touch.

On April 3, 2023, an FBI Undercover Agent ("UC") contacted defendant to arrange a telephone call. The UC told defendant that he was a recruiter for Rent-A-Hitman, asked defendant if he was still interested in a job, and if he wanted to schedule a phone interview. The UC told defendant that the phone conversation would serve as a preliminary interview, and an in-person interview would be scheduled if the phone interview was successful. Defendant stated that he wanted to do the phone interview. The UC and defendant agreed to talk via telephone on April 5, 2023.

On April 5, 2023, the UC placed a monitored and audio-recorded phone call to defendant. During the call, defendant stated that he was a trained military sniper and hoped that his military service would not disqualify him for the job. When the UC told defendant that it did not disqualify him, defendant exhaled and stated, "I am so relieved to hear that." At the conclusion of their conversation, defendant stated, "I definitely want to meet. I'm ready for this." The UC asked, "What made you interested in this profession?" Defendant responded, "Being in the military, doing that sort of work already. I was looking into civilian law enforcement but then I'm like nah, that's not for me. I wanted something more, I guess you would say, exciting. I started searching the web and then I found this, and I was like ooh, so here I am."

4

On April 6, 2023, the UC and defendant arranged to meet for an in-person interview that afternoon. During the interview, which was audio and video recorded, the UC warned defendant that he was entering a "dark, shadowy, violent world," and questioned whether defendant really wanted to be a hitman. Defendant stated, "My only question is when can I start?" and then stated, "I'm very excited."

On both April 5, and April 6, defendant stated that he owned an "M4A1" rifle, and that he intended to use that firearm to commit a murder for hire.

On April 9, 2023, the UC reached out to defendant about a job that was available if defendant was interested. Defendant responded, "Sounds good. Is there a specific time/date it needs to be done?" The UC told defendant that they would talk in person about the details. Defendant agreed to meet with the UC on April 12, 2023.

On April 12, 2023, defendant arrived at the agreed-upon meeting location in a BMW owned by him. During the meeting, which was audio and video recorded, defendant was presented with a target package consisting of photos and a description of a fictional target's name, weight, age, height, weight, address, vehicle, and employment information. The UC explained that the client was paying $5,000 for the target to be killed. The payment would be $2,500 at the time of acceptance, and the remainder when the job was complete. Defendant took an envelope containing $2,500 in cash from the UC and counted it. The UC told defendant that he would meet up with him again in approximately one week to provide him the rest of the money after the job was done. Defendant asked the UC if he needed to take a photo of the dead body as proof that the job was complete. Defendant also stated his intentions to surveil the target's location and to potentially use his earnings to purchase more firearms.

Immediately following the meeting with the UC, defendant was arrested and taken into custody. Agents subsequently obtained defendant's consent to search his vehicle and bedroom. They went to the home defendant shared with his parents and seized the above-described firearm and a laptop computer. Agents also seized defendant's cellphone, which was in his pocket at the time of arrest. A forensic search of the laptop and phone seized from defendant yielded evidence that defendant used both devices to communicate with Rentahitman.com and the UC.

In performing the above-described acts, defendant used a cellphone, the internet, and a motor vehicle, all of which are facilities of interstate commerce. By pleading guilty, defendant admits that the above acts were performed with intent that a murder be committed in violation of  the laws of any State or the United States.

All of the above-described events occurred in the Middle District of Tennessee.

Sentencing Guidelines Calculations

9.     The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth

5

at 18 U.S.C. § 3553(a) and will consider the U.S.S.G. advisory sentencing range in imposing defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective at the time of sentencing.

10. The parties have no agreement regarding calculation of the defendant's guidelines range.

11. Defendant is aware that any estimate of the offense level or guidelines range that defendant may have received from defendant's counsel, the United States, or the Probation Office is a prediction, not a promise, and is not binding on the Probation Office or the Court. Defendant understands that the Probation Office will conduct its own investigation and make its own recommendations, that the Court ultimately determines the facts and law relevant to sentencing, that the Court's determinations govern the final guidelines calculations, and that the Court determines both the final offense level and the final guidelines range.

## Agreements Relating to Sentencing

12. Each party is free to recommend whatever sentence it deems appropriate.

13. The government agrees that it will not request a sentence in excess of 60 months' incarceration.

14. Defendant agrees to pay the special assessment of $100 at the time of sentencing to the Clerk of the U.S. District Court.

## Abandonment of Property

15. Defendant agrees that the firearm identified as: Black Rain Ordinance Inc. Spec 15 Rifle, Serial Number SM0616441, and related ammunition, are evidence, contraband, or fruits of the crime for which he pleads guilty. As such, the defendant hereby abandons and relinquishes all claim, title, and interest to such property and cedes whatever interest he may have in such property

6

to the United States with the understanding, acknowledgment, and agreement that the property may be administratively forfeited and/or destroyed without further proceedings.

### Presentence Investigation Report/Post-Sentence Supervision

20. Defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

21. Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

22. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Middle District of Tennessee

and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

## Entry of Guilty Plea

23. The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and enter an order reflecting the acceptance of the plea while reserving acceptance of this plea agreement until receipt of the pre-sentence report and sentencing.

## Waiver of Appellate Rights

24. Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crime to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal any sentence within or below defendant's guideline range as determined by the Court. Defendant further waives all appellate rights and all collateral attacks concerning abandonment of property, forfeiture, and all matters related thereto. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c)(2) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal any sentence: within or above the defendant's guideline range as determined by the Court.

### Other Terms

25. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office. Defendant further agrees that any monetary penalties imposed by the Court will be subject to immediate enforcement as provided for in 18 U.S.C. § 3613 and submitted to the Treasury Offset Programs so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect the periodic payment schedule.

26. Should defendant engage in additional criminal activity after he has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

### Conclusion

27. Defendant understands that the indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

28. Defendant understands that his compliance with each part of this Plea Agreement extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement.

29. Defendant and his attorney acknowledge that no threats have been made to cause defendant to plead guilty.

30. No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

31. <u>Defendant's Signature:</u> I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date: 09/20/2024

Josiah Garcia
Defendant

32. <u>Defense Counsel Signature:</u> I am counsel for defendant in this case. I have fully explained to defendant his rights with respect to the pending indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case. I have reviewed carefully every part of this Plea Agreement with defendant. To my knowledge, defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date: 9/20/24

David Fletcher
Attorney for Defendant

Respectfully submitted,

HENRY C. LEVENTIS
United States Attorney

By: _____
Brooke K. Schiferle
Assistant U.S. Attorney

_____ By permission BKS
Ahmed A. Safeeullah
Deputy Chief